IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| PERRY J. LUIG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:13-cv-00094-O |
| | § | |
| NORTH BAY ENTERPRISES, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment (ECF No. 27), filed September 12, 2014; Brief in Support of Defendant's Motion for Summary Judgment (ECF No. 28), filed September 12, 2014; Appendix in Support of Defendant's Brief in Support of its Motion for Summary Judgment (ECF No. 29), filed September 12, 2014; Supplement to Defendant's Motion for Summary Judgment and Brief in Support (ECF No. 30), filed September 15, 2014; Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 33), filed October 7, 2014; Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment (ECF No. 34), filed October 7, 2014; and Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 39), filed October 16, 2014.

Having considered the motion, related briefing, record, and applicable law, the Court finds that Defendant's Motion for Summary Judgment should be and is hereby **DENIED**. For the reasons that follow, the Court further finds that Plaintiff's request for a declaration of the parties' rights and

obligations under their contract is hereby **GRANTED in part**.[1]

## I.    BACKGROUND

This dispute concerns the sale of a Bell helicopter by Plaintiff Perry J. Luig ("Luig") to Defendant North Bay Enterprises, Inc. ("North Bay") pursuant to an Aircraft Purchase Agreement. Luig seeks a declaratory judgment that he complied with the terms of the contract, and Defendant North Bay seeks damages for Luig's alleged breach of contract. The dispute centers on whether Luig failed to deliver the helicopter "with all systems in an airworthy condition and a current Certificate of Airworthiness" as provided in the parties' Aircraft Purchase Agreement. Def.'s App. Supp. Mot. Summ. J. Ex. 1A (Aircraft Purchase Agreement), App. 7, ECF No. 29.

On September 11, 2012, Luig entered into a signed, written contract to sell North Bay his Bell helicopter, tail number Bell NII59W, for $110,000. *See id.*; Def.'s Br. Supp. Mot. Summ. J. 1, ECF No. 28; Pl.'s Br. Resp. Mot. Summ. J. 1, ECF No. 34. The NII59W helicopter was more than 50 years old and had undergone several changes, including the removal of the aircraft's turbo charger engine. Def.'s App. Supp. Mot. Summ. J. Ex. 5 (Russum Dep.) 15:16–24, App. 88, ECF No. 29. The airworthiness certificate accompanying the helicopter indicated that the aircraft was a type "47 G3B1." *Id.* Ex. 2 (Luig Dep.) 77:16–22, at App. 30.

At the time of the contract, both parties understood that all aircraft flown in the United States are subject to Federal Aviation Administration ("FAA") regulations and must comply with relevant airworthiness directives. *See id.* 61:17–21, at App. 26. It is undisputed that the NII59W helicopter is subject to FAA Airworthiness Directive 80-04-04 ("AD 80-04-04"), promulgated in 1980. *See id.*

---

[1]Plaintiff's request is granted only in part because the Court does not affirm all of Plaintiff's specific requested declarations.

Russum Dep. 16:4–6, at App. 88. It is also undisputed that "no entries in the maintenance log specifically state that the AD [airworthiness directive] was complied with" and that "the FAA has determined that 'there is insufficient evidence to prove that AD 80-04-04 R1 was or was not accomplished.'" *See id.* Ex. 6 (Pl.'s 1st Am. Pet.) ¶ 11, at App. 101.

The parties' Aircraft Purchase Agreement includes two material terms at issue in this dispute. The first is a "Pre-purchase Inspection" term which reads in full:

> Purchaser will have Bill Clark perform the pre-purchase inspection at Seller's location. The Aircraft will be delivered with Fresh Annual Inspection with all systems in an airworthy condition and a current Certificate of Airworthiness. Seller will also take care of discrepancies list by Bill Clark on Attachment "A". Purchaser will notify Seller of its acceptance of the Aircraft by signature of the Aircraft Acceptance, "Attachment C".

*Id.* Aircraft Purchase Agreement, at App. 7. The second is the "Acceptance of Condition of Aircraft" term which reads in full: "At the time of delivery Purchaser agrees to accept the Aircraft in an 'as is where is' condition. (NO WARRANTY)." *Id.* at App. 8 (emphasis in original). The parties do not contest the existence of a valid contract that includes both of these terms. Def.'s Br. Supp. Mot. Summ. J. 1, ECF No. 28; Pl.'s Br. Resp. Mot. Summ. J. 1, ECF No. 34. After North Bay conducted a pre-purchase inspection and indicated several items to be repaired, Luig delivered the aircraft to North Bay with the requested repairs completed. Luig Dep. 39:11–13, at App. 23; *Id.* 66:1–17, at App. 27.

Plaintiff Luig brought a declaratory judgment action pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code in the 97th Judicial District Court of Archer County, Texas. *See* Notice Removal, ECF No. 1. Defendant North Bay removed the action to federal court and asserted a counterclaim for breach of contract. *Id.* Defendant now moves for Summary Judgment on its breach of contract counterclaim and associated claim for attorneys fees. Def.'s Mot. Summ. J., ECF

No. 27. The issues have been briefed, and the motion is ripe for determination.

## II.    LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

## III.    ANALYSIS

### A.    Applicable State Law

To determine the applicable state law for an action invoking diversity jurisdiction, the Court must apply choice of law rules of the forum state of Texas. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004). Generally, under Texas law, "the parties' contractual choice of law

4

will be given effect if the contract bears a reasonable relationship to the chosen state and no countervailing public policy of the forum demands otherwise." *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 720 (Tex. App.—Dallas 2004, no pet.); *accord* Tex. Bus. & Com. Code Ann. § 1.301 (Vernon 2009). Here, the parties contracted for Oklahoma law to govern actions concerning their Aircraft Purchase Agreement. Aircraft Purchase Agreement, at App. 8. However, because both parties bring claims under Texas law and neither invokes Oklahoma law, Texas law governs this action. *See Johnson*, 148 S.W.3d at 720 ("Absent a motion by a party, the law of Texas may be applied to a dispute.").

**B.     Defendant's Breach of Contract Claim**

The Aircraft Purchase Agreement at issue concerns the sale of goods, and thus is governed by the Article Two of the Uniform Commercial Code ("UCC"), adopted in Texas's Business and Commerce Code. *See Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 310 (Tex. App.—Dallas 2006, no pet.); Tex. Bus. & Com. Code Ann. § 2.102 (Vernon 2009).

Under the UCC in Texas, breach of contract and breach of warranty are separate and distinct causes of action, each with different available remedies. *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991). "Texas law forbids conflating breach of warranty and breach of contract." *A.O. Smith Corp. v. Elbi S.P.A.*, 123 F. App'x 617, 619 (5th Cir. 2005) (citing *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 897 (Tex. App.— Houston [1st Dist.] 2002, no pet.)). "[T]he critical factor in whether the buyer has a breach of contract or breach of warranty claim is whether the buyer has finally accepted the goods." *Emerson*, 201 S.W.3d at 310 (citing Tex. Bus. & Com. Code Ann. §§ 2.711, 2.714 (Vernon 1994)); *see also Trident Steel Corp. v. Wiser Oil Co.*, 223 S.W.3d 520, 526 (Tex. App.—Amarillo 2006, pet. denied) ("[I]t is the buyer's acceptance or

5

rejection of goods which determines the remedies available to the buyer, not the seller's mere delivery of something."). Damages for delivery of non-conforming goods are permitted under a breach of warranty cause of action; whereas, damages are only permitted under a breach of contract cause of action when the seller has failed to deliver the goods, the buyer has rejected the goods, or the buyer has revoked his acceptance. *See A.O. Smith*, 123 F. App'x at 619; *Sw. Bell*, 811 S.W.2d at 576; *Emerson*, 201 S.W.3d at 310. "Failure of the buyer to reject even non-conforming goods within a reasonable time and to seasonably notify the seller of rejection automatically results in acceptance of the goods . . . , and his remedies are limited to damages for breach of warranty under Section 2.714." *Glenn Thurman, Inc. v. Moore Const., Inc.*, 942 S.W.2d 768, 772 (Tex. App.—Tyler 1997, no writ.) (citing provisions of the Texas Business and Commerce Code).

Although this distinction between breach of contract and breach of warranty limiting the availability of damages is not always applied, the overwhelming majority of Texas cases adhere to this rule. *Compare Morgan Bldgs. & Spas, Inc. v. Humane Soc'y of Se. Texas*, 249 S.W.3d 480, 491 (Tex. App.—Beaumont 2008, no pet.), *with Emerson*, 201 S.W.3d at 310, *Trident*, 223 S.W.3d at 526, *Lyda Constructors, Inc. v. Butler Mfg. Co.*, 103 S.W.3d 632, 637 (Tex. App.—San Antonio 2003, no pet.), *Ellis*, 68 S.W.3d at 897, *Glenn Thurman*, 942 S.W.2d at 772, *Chilton Ins. Co. v. Pate & Pate Enterprises, Inc.*, 930 S.W.2d 877, 890 (Tex. App.—San Antonio 1996, writ denied), *and Roy v. Howard-Glendale Funeral Home*, 820 S.W.2d 844, 848 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

Some federal district courts also have been reluctant to apply Texas's distinction. *See, e.g.*, *Beauty Mfg. Solutions Corp. v. Ashland, Inc.*, 848 F. Supp. 2d 663, 668 (N.D. Tex. 2012) (Fish, J.); *Contractor's Source Inc. v. Hanes Companies, Inc.*, No. CIV.A.09-CV-0069, 2009 WL 6443116,

at *5 (S.D. Tex. Dec. 29, 2009); *but see A.O. Smith*, 123 F. App'x at 619. However, as this is a diversity case arising under Texas contract law, this Court is bound to follow Texas law. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 409 (5th Cir. 2004) ("[I]t is not the role of federal courts sitting in diversity to ignore longstanding and consistently applied Texas legal authorities."); *Folks v. Kirby Forest Indus. Inc.*, 10 F.3d 1173, 1182 (5th Cir. 1994) ("[T]he district court was required to rule as the Texas courts most likely would rule.").

Thus, whether North Bay may state a cause of action for breach of contract depends on whether North Bay has finally accepted the aircraft. Under the UCC, "[a] buyer accepts goods if he agrees to accept them despite their nonconformity, fails to make an effective rejection, or does any act inconsistent with the seller's ownership." *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 771 (Tex. App. 2005–Fort Worth 2005, pet. granted, judgm't vacated w.r.m.) (citing Tex. Bus. & Com. Code Ann. § 2.606 (Vernon 1994)).

In Defendant's Motion for Summary Judgment, North Bay does not assert that it rejected or revoked acceptance of the helicopter. Instead, North Bay insists that it performed all of its obligations under contract. Def.'s Mot. Summ. J. 1, ECF No. 27. ("The Parties do not dispute the existence of a valid contract, the relevant terms, nor that North Bay completed its obligations under the contract."). The uncontested facts reflect that helicopter was delivered to North Bay and that the company paid the contracted price and other costs to maintain the grounded aircraft. Def.'s App. Supp. Mot. Summ. J. Ex. 1 (Gartmann Dep.), App. 3–4, ECF No. 29; Luig Dep., at App. 27.

North Bay's requested remedies further evidence that it has not and does not intend to revoke its acceptance of the helicopter. Instead of seeking a revocation of the contract, which would be the appropriate remedy for a breach of contract action under Texas law, North Bay seeks damages to

7

restore the aircraft to an airworthy condition. *See Neal v. SMC Corp.*, 99 S.W.3d 813, 816 (Tex. App.—Dallas 2003, no pet.) ("Unlike a claim of warranty that seeks a fix for defective goods or damages, a revocation seeks to put the buyer in the same position as if he had rejected the goods at the time of delivery."). The undisputed evidence shows that North Bay has expressed no desire to return the aircraft or revoke the contract, and North Bay has not otherwise raised a fact issue that the acceptance was not final. Therefore, as a matter of law, North Bay is not entitled to damages under a breach of contract claim for Luig's delivery of this helicopter.

### C.      Plaintiff's Claim for Declaratory Relief

Having considered the uncontested facts submitted on the Defendant's Motion for Summary Judgment, the Court determines that Plaintiff's claim for declaratory relief may be resolved as a matter of law. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Atkins v. Salazar*, 677 F.3d 667, 678 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Because Defendant North Bay moved for summary judgment as to its counterclaim and dismissal of Plaintiff's claim for declaratory relief, the parties were on notice to present arguments relating to both claims. *See Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 798 (5th Cir. 2010) (holding Plaintiff had "ample notice and opportunity to object to the scope of relief prayed for" because Defendant "affirmatively requested dismissal of the complaint as a whole"). In Luig's complaint, "Plaintiff requests a declaratory judgment regarding the meaning of certain language in the Agreement, including without limitation: (1) the 'as is' clause; (2) the pre-purchase inspection clause; and (3) any conflict between the same." Def.'s App. Supp. Mot. Summ. J. Ex. 6 (Pl.'s First Am. Pet.), App. 102, ECF No. 29. As the material facts are uncontested, the

8

Court may resolve Plaintiff's request for declaratory relief on summary judgment.

1.    Interpretation of the Aircraft Purchase Agreement

Plaintiff Luig seeks a declaration, pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, explaining the proper interpretation of the "as is" clause in the parties' Aircraft Purchase Agreement. *Id.* Plaintiff argues that the parties intended the clause to waive all warranties and other objections to the condition of the helicopter. Pl.'s Br. Resp. Mot. Summ. J. 3–4, ECF No. 34. He contends that it is irrelevant whether the aircraft was delivered "in an airworthy condition," as specified in the "Pre-purchase Inspection" term of the contract, because North Bay agreed to accept the helicopter "as is" after having an opportunity to inspect the aircraft and its documentation. *See* Aircraft Purchase Agreement, at App. 7–11. Whether Luig's argument succeeds depends upon the proper interpretation of the "as is" term evaluated in conjunction with the "Pre-purchase Inspection" term.

Under Texas law, the goal of contract interpretation is "to ascertain the true intentions of the parties as expressed in the instrument." *Philadelphia Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 587 (Tex. App.—Fort Worth 2004, no pet.). "This court is bound to read all parts of a contract together to ascertain the agreement of the parties. The contract must be considered as a whole. Moreover, each part of the contract should be given effect." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) (citations omitted); *accord Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (applying Texas law). Thus, "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau*, 876 S.W.2d at 134.

If there is ambiguity regarding a contract term, a grant of a motion for summary judgment

would be improper because the interpretation of the ambiguity would be a factual issue. *See Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983). However, "[a]n ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Rather, "[w]hether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker*, 650 S.W.2d at 393–94 (citing *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex. 1980)). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.* (citing *R & P Enterprises,* 596 S.W.2d at 519).

### a.    Implied Warranties

It is clear that the parties to the Agreement intended, at a minimum, to waive implied warranties through the use of the "as is" clause. Language to exclude the implied warranties of merchantability and fitness must be conspicuous. Tex. Bus. & Com. Code Ann. § 2.316(c). Section 2.316(c)(1) of the Texas Business and Commerce Code specifies that "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is.'" The relevant contract term in the parties' Aircraft Purchase Agreement reads: "At the time of delivery Purchaser agrees to accept the Aircraft in an 'as is where is' condition. (NO WARRANTY)." Aircraft Purchase Agreement, at App. 7 (emphasis in original). Because the parties used the expression "as is" as well as placing "NO WARRANTY" in all capital letters in their two-page written contract, the disclaimer was conspicuous. Therefore, the parties expressed a clear intent to exclude all implied warranties.

North Bay insists that the "as is" clause is merely boilerplate language that should not be

given effect in light of "the nature of the transaction and the totality of the circumstances." *Prudential Ins. Co. of Am. v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995). However, according to the Texas Supreme Court, "[w]here the 'as is' clause is an important part of the basis of the bargain, not an incidental or 'boiler-plate' provision, and is entered into by parties of relatively equal bargaining position, a buyer's affirmation and agreement that he is not relying on representations by the seller should be given effect." *Id.* Here, the nature of the transaction indicates that the "as is" clause was not mere boilerplate. North Bay does not allege that the parties were of unequal bargaining power. Moreover, the parties' agreement permitted North Bay to inspect the aircraft and submit a list of repairs to be made before delivery. Aircraft Purchase Agreement, at App. 7–10. Such pre-purchase inspections indicate that the parties understood that they would disclaim implied warranties upon acceptance. *See* Tex. Bus. & Com. Code Ann. § 2.316(c)(2) ("[W]hen the buyer before entering into the contract has examined the goods . . . there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him."). In light of the circumstances, it is clear that the parties intended the "as is" clause to disclaim implied warranties.

b.      *Express Warranties*

The final issue is whether the parties intended to waive express warranties in addition to implied warranties through the "as is" disclaimer. Under Texas law, "mere use of the two words 'as is' has never been held to automatically bar an action on an express warranty." *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 110 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Prudential*, 896 S.W.2d at 162 ("By our holding today we do not suggest that an "as is" agreement can have this determinative effect in every circumstance.") Instead, the Court must evaluate "the

11

nature of the transaction and the totality of the circumstances." *Id.*

North Bay alleges that Luig made an express promise in the written contract that the aircraft will be delivered in "an airworthy condition" and this express promise cannot be disclaimed in the same instrument. According to North Bay, it relied upon the express promise that the aircraft will be delivered in an airworthy condition. *See* Def.'s Reply Mot. Summ J. 6. Quoting *Prudential*, North Bay argues that "[a] seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as is', and then disavow the assurance which procured the 'as is' agreement." 896 S.W.2d at 162; *see also Materials Mktg. Corp. v. Spencer*, 40 S.W.3d 172, 175 (Tex. App.—Texarkana 2001, no pet.) ("Section 2.316(a) is a viable form of relief when an express warranty is made that is inconsistent with an attempted disclaimer.").

Texas courts have upheld express warranties, despite "as is" clauses, when a seller has perpetuated a fraud upon the buyer or has concealed some defect from him to induce a purchase. *See, e.g.*, *Harstan, Ltd. v. Si Kyu Kim*, No. 08-12-00086-CV, 2014 WL 3696114 (Tex. App. July 25, 2014). Most cases involving the "as is" term involve oral promises made before the contract was formed in writing rather than conflicting written terms within a contract. *See, e.g.*, *id.* However, Texas courts will assess the actual intent of the parties and actual reliance upon express warranties. *See Oakwood Mobile Homes, Inc. v. Cabler*, 73 S.W.3d 363, 372 (Tex. App.—El Paso 2002, pet. denied) ("Here, unlike Prudential, it is clear Appellees were relying on representations by the seller and those representations should be given effect.").

The Court must therefore evaluate whether the airworthiness clause in the contract constitutes an express warranty and, if so, whether the parties intended to disclaim it. "The Texas courts treat the question of whether a promise constitutes an express warranty as a question of law." *Brooks,*

12

*Tarlton, Gilbert, Douglas & Kressler v. U.S. Fire Ins. Co.*, 832 F.2d 1358, 1372 *clarified on reh'g*, 832 F.2d 1378 (5th Cir. 1987). "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Tex. Bus. & Com. Code § 2.313(a)(1). There is a difference "between promises which are merely terms of the contract and promises which rise to the level of warranties." *Beauty Mfg.*, 848 F. Supp. 2d at 671. "A contract term identifies what is being sold; [whereas] warranties describe the attributes, suitability for a particular purpose, and ownership of what is sold." *Lyda Constructors*, 103 S.W.3d at 637. The warranty analysis evaluates "whether the goods delivered pursuant to the contract are in conformance with the statement or representation of the character, quality or title of the goods promised at the time of sale." *Id.* "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." Tex. Bus. & Com. Code Ann. § 2.313(b).

Here, at the time of the sale, it was represented that the aircraft would be delivered "with all systems in an airworthy condition and a current Certificate of Airworthiness." Aircraft Purchase Agreement, at App. 7–11. Airworthiness is technical term that describes compliance with FAA standards. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 806 (1984). In order for an aircraft to be legally flown in the United States, it must be in compliance with FAA guidelines of airworthiness. *Id.* Such compliance is denoted by maintaining a current airworthiness certificate. *Id.* Agreeing to deliver the aircraft in "an airworthy condition," therefore, does not merely mean that a person may be able to safely fly the aircraft. *See GoJet Airlines, LLC v. F.A.A.*, 743 F.3d 1168, 1172 (8th Cir. 2014) ("[A]irworthiness does not mean

flyability."). Instead, the terms "airworthy" and "certificate of airworthiness" in light of the circumstances present at the time of signing are capable of only one reasonable interpretation – compliance with FAA's technical and legal requirements. *See* 49 U.S.C. § 44704.

Further, the "airworthiness" contract term is a "representation of the character, quality or title of the goods promised at the time of sale." *Lyda Constructors*, 103 S.W.3d at 637. It describes the essential quality of an aircraft, the ability to be legally flown in the United States. At the time the parties agreed that the helicopter would be delivered "with all systems in an airworthy condition," both parties were aware that helicopters are subject to the FAA's airworthiness requirements. *See* Russum Dep. 39:11–13, at App. 88; *S.A. Empresa*, 467 U.S. at 806. Therefore, the term "airworthy" is not ambiguous, and this written assurance of airworthiness rises to the level of express warranty as a matter of law.

Having concluded that the "airworthiness" provision rises to the level of an express warranty, the Court next turns to whether the parties intended to disclaim the warranty. "Where an express warranty is shown to exist, it can only be excluded or modified pursuant to § 2.316(a), which requires that an exclusion or modification be 'reasonable' and 'consistent with the express warranties made.'" *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 815 (S.D. Tex. 2013). "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other." Tex. Bus. & Com. Code Ann. § 2.316(a). "When we ascertain the parties' intentions in a warranty, we look to well-established rules for interpretation and construction of contracts." *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60–61 (Tex. 2008).

The Court must therefore evaluate both the warranty term and the disclaimer term in light

14

of the contract as a whole."As a general rule of contract construction, a contract should not be construed in a way which renders any of its terms meaningless." *Brooks*, 832 F.2d at 1366. "We do not consider only those parts of a contract that favor one party, but examine the writing as a whole to harmonize and give effect to all of the contract's provisions." *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citations omitted). Therefore, "[w]hen the provisions of a contract appear to conflict, we will attempt to harmonize the two provisions and assume the parties intended every provision to have some effect." *United Protective Servs., Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.). Under Luig's proffered interpretation, the "as is" clause would disclaim any assurances that the aircraft would be delivered "in an airworthy condition," making the term meaningless. Instead, the Court must interpret the clauses to give meaning to both of the seemingly conflicting clauses.

*NuStar Energy* provides guidance when courts are faced with such seemingly conflicting terms. "A contract is not necessarily ambiguous simply because some sections arguably conflict. This is because parties may choose to set out a general rule in one provision and exceptions to that rule in other provisions." *NuStar Energy*, 402 S.W.3d at 466. The court concluded that "[t]o the extent of any conflict, specific provisions control over more general ones." Therefore, in order to harmonize the terms of the Aircraft Purchase Agreement according to general rules of contract construction and Texas Business and Commerce Code § 2.316, the specific "airworthiness" warranty term must control over the more general disclaimer of warranties written in the same contract. Thus, as a matter of law, the "as is" provision does not disclaim the express warranty that the aircraft will be delivered in compliance with FAA standards of airworthiness.

      2.      <u>FAA Airworthiness Requirements</u>

Finally, the parties disagree about whether Luig has delivered the aircraft in an airworthy condition, fulfilling his obligations. Because Plaintiff Luig has requested a declaration as to his rights and obligations under the contract, and the facts necessary to a resolution of the action are uncontested, the Court may address the obligations of the "airworthiness term" on summary judgment. *See Atkins*, 677 F.3d at 678.

North Bay first argues that the aircraft was not in an "airworthy condition" because the aircraft was not delivered with a proper airworthiness certificate. Def.'s Br. Supp. Mot. Summ. J. 7–8, ECF No. 28.

As a matter of law, an aircraft without a valid airworthiness certificate is not airworthy. *See S.A. Empresa*, 467 U.S. at 806. According to the United States Supreme Court, the FAA issues airworthiness certificates in order to denote "that the particular aircraft in question conforms to the type certificate and is in condition for safe operation." *Id.* It is against FAA regulations "for any person to operate an aircraft in air commerce without a valid airworthiness certificate." *Id.*

According to the Texas Supreme Court in *Puckett v. United States Fire Insurance Company*, aircraft must continually satisfy FAA airworthiness requirements in order for airworthiness certificates to remain valid. 678 S.W.2d 936, 937 (Tex. 1984). The court reasoned that under FAA regulations themselves, "the certificate was effective only so long as all maintenance requirements had been met." *Id.* (citing 14 C.F.R. § 21.181(a)(1) (1981)); *see also Bill Hames Shows, Inc. v. J. J. Taylor Syndicate No. 173*, 642 F.2d 179, 180 (5th Cir. 1981) (holding the same). The court in *Puckett* determined that improper maintenance invalidated the airworthiness certificate, thereby violating the term of parties' insurance contract that required a valid airworthiness certificate. Nevertheless, the court held that public policy prevented enforcing the term in an insurance context

16

without proof of causation. *Id.* at 938. ("[A]n insurer cannot avoid liability under an aviation liability policy unless the failure to inspect is either the sole or one of several causes of the accident"). Because this case does not involve insurance liability, there is not the same public policy rationale to disregard the parties express agreements. Therefore, under Texas contract law, the airworthiness certificate lapses if not all of the FAA's airworthiness requirements have been met.

To be valid, the FAA requires that airworthiness certificates indicate the proper type of aircraft. "[A]n airplane must conform to the type certificate approved for that model aircraft and must be in a condition for safe operation." *GoJet Airlines*, 743 F.3d at 1171. Whenever a major change is made to an aircraft, a new type certificate or a supplemental type certificate may be required by the FAA. *See* 14 C.F.R. § 21.113; 14 C.F.R. § 21.19; *S.A. Empresa*, 467 U.S. at 806.

In the instant case, the aircraft was delivered with an invalid airworthiness certificate in violation of FAA guidelines. The record before the Court reflects that all parties agree that the aircraft type designation listed on its airworthiness certificate is not the correct type designation. *See* Def.'s Br. Supp. Mot. Summ. J. 7–8, ECF No. 28.  Although the parties disagree about the precise designation, Plaintiff and Plaintiff's expert testified that prior modifications to the aircraft's engine changed the aircraft such that it did not meet the specifications for the type listed in the airworthiness certificate, 47-G3B1, at the time of the purchase. *See* Luig Dep. 50:19–23, at App. 24; Russum Dep. 33:22–34:4, at App. 93.

Luig has failed to submit or cite any competent facts to raise a dispute on this issue. *See Haile v. Town of Addison*, 264 F. Supp. 2d 464, 465 (N.D. Tex. 2003) (Solis, J.) ("Once the party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue."). Instead, in his response, Luig makes

two bare assertions without support in the record. *See* Pl.'s Br. Resp. Mot. Summ. J. 2–3, ECF No. 34. First, he points to his answers to an interrogatory which has not been filed with the court. *Id.* Next, Plaintiff contends, citing a missing Exhibit 6, that "the Lubbock Field Office of the FAA said that the modifications to the engine were properly documented and that they did not thin[k] a type change was necessary." *Id.* There is nothing in the record that mentions the Lubbock Field Office. The FAA correspondence, if any such exists, has not been submitted to the Court as evidence. Plaintiff has failed to cite any evidence in the record to support its allegations.

North Bay next contends that the aircraft's logs do not adequately indicate compliance with Airworthiness Directive 80-04-04. Under 14 C.F.R. § 39.3, "[n]o person may operate a product to which an airworthiness directive applies except in accordance with the requirements of that airworthiness directive." *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 569 (5th Cir. 2001). Moreover, the FAA requires that log entries affirmatively demonstrate compliance with the airworthiness directives. According to C.F.R. § 121.380(a)(vi), "[e]ach certificate holder shall keep (using the system specified in the manual required in § 121.369) the following records for the periods specified in paragraph (c) of this section: . . . The current status of applicable airworthiness directives, including the date and methods of compliance, and, if the airworthiness directive involves recurring action, the time and date when the next action is required." Here, the parties both assert that the documentation was insufficient for the FAA to determine whether in compliance. *See* Pl.'s Br. Resp. Mot. Summ. J. 2, ECF No. 34 ("The FAA, the group who issues the Airworthiness Directives that North Bay complains of, has already stated that an accurate status of the directive cannot be determined."). Because both parties, including Plaintiff, argue that the aircraft's maintenance records do not clearly indicate that the aircraft has satisfied AD 80-04-04, the aircraft's

18

records fail to demonstrate the affirmative compliance necessary for an aircraft to be airworthy.

Plaintiff alleges that his expert "Cy Russum opined that the aircraft, described with modifications, was airworthy." *Id.* at 3. However, in Cy Russum's deposition, he came to the opposite conclusion. He testified that "[I]f I had to do it again, I would say it was unairworthy . . . With what I know today." Russum Dep. 23:15–24, at App. 90. Therefore, Luig has failed to demonstrate that there is a genuine issue of material fact, and the aircraft was not airworthy under FAA regulations when it was delivered.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant's motion for summary judgment on its breach of contract counterclaim. Because there is no evidence before the Court that Defendant rejected delivery or otherwise revoked its acceptance of the aircraft, Defendant's breach of contract claim fails as a matter of law. It is therefore **ORDERED** that Defendant's breach of contract claim is **DISMISSED** with prejudice and Defendant's associated claim for attorney's fees for breach of contract is therefore **DISMISSED** as moot.

It is **FURTHER ORDERED** that Plaintiff's request that the Court declare the rights and obligations of the parties under the contract is **GRANTED in part**. The Court **DECLARES** as a matter of law that:

- • The "as is" provision in the parties' Aircraft Purchase Agreement disclaims all implied warranties.

- • The "as is" provision does not disclaim the express warranty written in the contract that the aircraft was to be delivered "in an airworthy condition."

- • "Airworthiness" is an unambiguous term signifying compliance with FAA

Airworthiness Regulations.

• For an aircraft to be airworthy under FAA Regulations, the aircraft's airworthiness certificate must indicate the correct type of aircraft.

• The aircraft type listed on its airworthiness certificate in this case is not the correct type designation due to prior engine modifications.

• Because the aircraft type on the airworthiness certificate is not the correct type designation, the aircraft is not in an airworthy condition as a matter of law.

• For an aircraft to be airworthy under FAA Regulations, the aircraft must be in compliance with all applicable Airworthiness Directives and the records must clearly indicate compliance.

• The logbook does not clearly indicate whether the aircraft complied with AD 80-04-04.

• Because the logbook does not clearly indicate the status of AD 80-04-04, the aircraft is not in an airworthy condition as a matter of law.

All issues presented by the parties' pleadings having been resolved, the Court will issue a Final Judgment.

   **SO ORDERED** this **27th day of October, 2014.**


                                                    _____
                                                    Reed O'Connor
                                                    **UNITED STATES DISTRICT JUDGE**



                                         20